IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AKHIL BANSAL,<br>  Plaintiff,<br><br>  v.<br><br>ERIC RUSS, et al.,<br>  Defendants. | CIVIL ACTION<br><br>NO. 06-4264 |

## MEMORANDUM & ORDER

Katz, S.J._____          April 5, 2007

This is a civil action brought by Plaintiff Akhil Bansal against fifteen

individual federal employees, four federal agencies and the United States.

Plaintiff seeks $750 million in compensatory and punitive damages and

"administrative discipline" against individual defendants for alleged constitutional

and statutory violations arising out of his criminal prosecution and conviction.

See Complaint ("Cpt.").  Now before the court is Defendants' Motion to Dismiss

or in the Alternative Summary Judgment.  For the reasons stated below, the

Motion is **GRANTED** in part and **DENIED** in part.

I.      FACTS

A.  Plaintiff's Criminal Prosecution

Plaintiff was involved in "an international conspiracy – involving India, the

United Kingdom, France, Norway, Canada, Ireland, Sweden, Germany, the British

Virgin Islands, Belize, and Samoa – to distribute illegal prescription drugs,

including Darvocet, Codeine, Ativan, Xanax, Valium, Viagra, and Ketamine."

See United States v. Bansal, 2:05-cr-0193, Dkt. No. 479.   On April 6, 2005,

Plaintiff and sixteen co-defendants were indicted by a grand jury in the Eastern

District of Pennsylvania on two counts of conspiracy to distribute controlled

substances, two counts of conspiracy to import controlled substances, two counts

of operating a continuing criminal enterprise, two counts of introduction of

misbranded drugs into interstate commerce, aiding and abetting, one count of

conspiracy to introduce misbranded drugs into interstate commerce, two counts of

conspiracy to commit money laundering, ten counts of international money

laundering, aiding and abetting, eight counts of transactional money laundering,

aiding and abetting, seven counts of promotional money laundering, aiding and

abetting, two counts of international money laundering, three counts of

transactional money laundering, and three counts of promotional money

laundering.  See United States v. Bansal, No. 2:05-cr-0193.  Thirteen of these

counts were dismissed without prejudice.  Id.  After a five-and-a-half week jury

trial, Plaintiff was convicted on all remaining thirty-one counts. Id., Dkt. No. 561.

He has not yet been sentenced.

Plaintiff was represented by counsel before and during his criminal trial.

See United States v. Bansal, Dkt. Nos. 33, 91, and 169.  On motion of the United

States, search warrants, affidavits in support thereof, and search warrant returns

were unsealed and provided to Plaintiff and his co-defendants.  See United States

v. Bansal, Dkt. Nos. 197, 198, 204, 205, 206, 207, 208, and 209.  Plaintiff

thereafter filed motions to suppress evidence derived from electronic surveillance

of his e-mail accounts (Dkt. No. 215), to suppress physical evidence (Dkt. No.

220), to suppress all electronic evidence derived from allegedly illegal search and

seizure of stored electronic communications (Dkt. 232), to dismiss indictment

(Dkt. 289), to suppress all physical evidence seized pursuant to allegedly

warrantless search of garage (Dkt. No. 290), to dismiss indictment on grounds of

alleged defects in grand jury proceeding (Dkt. 291), to exclude evidence (Dkt. No.

292), and to suppress all physical evidence obtained by allegedly warrantless

search of Plaintiff's vehicle (Dkt. 293).  He thereafter filed another motion to

suppress evidence derived from electronic surveillance of e-mail accounts (Dkt.

308) and another motion to suppress all electronic evidence derived from allegedly

illegal search and seizure of stored electronic communications (Dkt. 309).  All of

these motions were denied. Dkt. 242 (denying motions at Dkt. 215 and 232,

among others), Dkt. 342 (denying motion to dismiss indictment, Dkt. 289), Dkt.

348 (denying motion to suppress physical evidence, Dkt. 220), Dkt. 355 (denying

motion to suppress evidence seized from stored electronic communications, Dkt. 309), Dkt. 362 (denying motion to dismiss indictment because of defects in grand jury proceeding, Dkt. 291, and motion to exclude evidence, Dkt. 292, among others), Dkt. 427 (denying motion to suppress evidence from search of defendant's vehicle, Dkt. 293), Dkt. 433 (denying motion to suppress evidence seized from garage, Dkt. 290), and Dkt. 479 (denying motion to suppress evidence derived from electronic surveillance over e-mail account, Dkt. 308).

## B. Plaintiff's Civil Action

On September 27, 2006, Plaintiff filed a thirty-eight count complaint alleging constitutional and statutory violations against five agents or employees of the Drug Enforcement Administration ("DEA"), two Special Agents of the Federal Bureau of Investigation ("FBI"), one Special Agent of the Internal Revenue Service ("IRS"), five Assistant United States Attorneys ("AUSAs"), the United States Attorney for the Eastern District of Pennsylvania, the Attorney General of the United States, the DEA, the FBI, the IRS, the United States Attorney's Office for the Eastern District of Pennsylvania ("USAO") and the United States of America. Cpt., ¶¶ 7-26. Plaintiff sued the DEA agents, the FBI agents, the IRS agent and the AUSAs in their individual and official capacities; he sued the United States Attorney and the Attorney General in their official capacities only. See

Cpt., ¶¶ 7-19.

Defendants Cohan, Kelly, Costello, Pavlock and Witzleben (the "AUSA Defendants") were the Assistant United States Attorneys who prosecuted Plaintiff and his sixteen co-defendants.  Defendant Patrick Meehan was the United States Attorney for the Eastern District of Pennsylvania during the investigation and prosecution of Plaintiff, and Defendant Alberto Gonzales was the Attorney General of the United States during at least part of the investigation of Plaintiff and during Plaintiff's trial.

Defendants Russ, Aquino, Gobin, Konieczny, Del Re, Huff, Bole and Carp ("Agent Defendants") were agents of the federal investigatory agencies, DEA, FBI and IRS, which conducted the investigation of Plaintiff's criminal enterprise.

### 1.    Allegations Against the AUSA Defendants

In Count 1 of his complaint, Plaintiff alleges the AUSA Defendants violated the Right to Financial Privacy Act, 12 U.S.C. § 3401, et seq., by obtaining Plaintiff's bank and credit card records without "provid[ing] any certification of compliance required as per the act," and without "provid[ing] any notice or dela[y]ed notice" as required by the Act.  Cpt., ¶ 33.

In Counts 2 through 8, Plaintiff alleges the AUSA Defendants violated the

Stored Communications Act, 18 U.S.C. § 2701, et seq., and 18 U.S.C. § 2,[1] by

obtaining search warrants without probable cause (Cpt., ¶¶ 36, 40, 43, 46, 49, and

53), obtaining search warrants "out of jurisdiction" (id.), asking for "opened" e-

mails (id.), providing no notice or delayed notice of the search warrants to Plaintiff

(Cpt., ¶¶ 37, 40, 43, 46, 49, and 53), providing no inventory sheet to the issuing

magistrate judge (id.), and providing no "order of preservation request." Id.

Further, Plaintiff alleges the AUSA Defendants violated the Stored

Communications Act by obtaining the contents of Plaintiff's Temple University e-

mail account without any kind of subpoena, court order or search warrant. Cpt., ¶

57.

　　　In Counts 9 through 11 of the complaint, Plaintiff alleges the AUSA

Defendants violated the Wiretap Act, 18 U.S.C. § 2510, et seq., by obtaining

wiretap orders that were "not issued by the judge within the jurisdiction," that

authorized seizure, rather than interception, of e-mails from stored

communications, and that were based on "faulty" affidavits. Cpt., ¶¶ 61, and 65.

In addition, Plaintiff alleges AUSA Defendants violated the Wiretap Act by not

---

[1] In Counts 2 through 8, as well as Counts 9 through 14, 16 through 22, and 24, Plaintiff references 18 U.C.S. § 2, which provides that a person aiding, abetting, or causing to be committed an offense against the United States is punishable as a principal. Since this action does not involve offenses against the United States, this statute has no relevance to the issues before the Court.

using a "device" to obtain the e-mail communications and not timely sealing the communications.  Id.  Finally, Plaintiff alleges AUSA Defendants violated the Wiretap Act by intercepting telephone communications between the United States and India without a court order.  Cpt., ¶ 68.

In Count 12 of the complaint, Plaintiff alleges the AUSA Defendants violated the Computer Fraud Act, 18 U.S.C. § 1030(a)(2)(C), by exceeding "authorized access" to a protected computer.  Cpt., ¶ 71.

In Count 13 of the complaint, Plaintiff alleges the  AUSA Defendants violated the Pen Register Statute, 18 U.S.C. § 3121, et seq., by causing to be installed pen registers and trap & trace devices without a court order.  Cpt., ¶ 73.

In Count 14 of the complaint, Plaintiff alleges the AUSA Defendants procured search warrants knowing that they were "maliciously drafted" and without probable cause or particularity, in violation of 18 U.S.C. § 2235.

In Count 16[2] of the complaint, Plaintiff claims that the AUSA Defendants' conduct alleged in Counts 1 through 13 constituted violations of Plaintiff's rights under the Fourth Amendment.  He also claims the AUSA Defendants violated Rule 41 of the Federal Rules of Criminal Procedure (Search and Seizure), but he does not specify what provision of the Rule he believes was violated.  Plaintiff

---

[2]  Count 15 contains no allegations against the AUSA Defendants.

further alleges the AUSA Defendants violated 18 U.S.C. § 3101, et seq. (Searches and Seizures), but again he does not specify which provisions he believes were violated.  Cpt., ¶ 81.

In Count 17 of the complaint, Plaintiff claims the AUSA Defendants violated his Fifth Amendment rights by presenting false and misleading information to the grand jury, providing discovery to Plaintiff in electronic format, and "maliciously put[ting] a 'sep[a]ration order' between Plaintiff and his co-defendant to hamper his defense."  Cpt., ¶ 85.  He also claims that AUSA Pavlock violated his Fifth Amendment rights by obtaining restraining orders "without probable cause."  Id.

In Count 18 of the complaint, Plaintiff alleges the AUSA Defendants violated his Sixth Amendment rights by maliciously filing motions for continuances, attempting to "threaten and coerce pla[i]ntiff to give statements without the presence of his counsel," and sending a co-defendant to Africa.  Cpt., ¶ 88.

In Count 19 of the complaint, Plaintiff alleges the AUSA Defendants suborned perjury in the grand jury and in February, March and April of 2006 (presumably before the Court), in violation of 18 U.S.C. § 1622.

In Count 20, Plaintiff alleges the AUSA Defendants made and presented

8

false material declarations to the grand jury and at trial, in violation of 18 U.S.C. § 1623.

In Count 21, Plaintiff alleges the AUSA Defendants violated 18 U.S.C. § 2234 (authority exceeded in executing warrant) by conducting a warrantless search of Plaintiff's garage.  Cpt., ¶¶ 96, 97.

In Count 22, Plaintiff alleges Defendant Cohan violated 18 U.S.C. § 2236 (searches without warrant) by conducting warrantless searches and seizures between August 2004 and June 2005.  Cpt., ¶¶ 98, 100.

In Count 23, Plaintiff alleges the AUSA Defendants violated 18 U.S.C. § 241 (Conspiracy against rights).  Cpt., ¶¶ 101, 103.  However, Plaintiff does not specify what alleged conduct he believes constituted a violation of this criminal statute.

In Count 24, Plaintiff alleges the AUSA Defendants violated 18 U.S.C. § 242 (Deprivation of rights under color of law).  Cpt., ¶¶ 104, 106.  Again, Plaintiff does not specify what alleged conduct he believes constituted a violation of this criminal statute.

In Counts 25 through 34, Plaintiff alleges that the conduct described in Counts 2 through 11 violated various Pennsylvania statutes relating to wire and electronic communications. Cpt., ¶¶ 107-110.

In Counts 36 through 38, Plaintiff alleges the AUSA Defendants committed the common law torts of invasion of privacy, abuse of process, and civil conspiracy, but he does not specify what conduct he believes was tortious.  Cpt., ¶¶ 113-116.

### 2.    Allegations Against the Agent Defendants.

Plaintiff's allegations with respect to the Agent Defendants are identical to the allegations with respect to the AUSA Defendants with the following exceptions:

1.  Counts 1 through 3, 5 through 14, and 17 contain no allegations against Agents Del Re and Bole.

2.  Count 4 contains no allegations against Agents Gobin, Del Re and Bole.

3.  Count 15 alleges Agents Russ, Konieczny, Huff, Bole, Carp and Gobin arrested Plaintiff without advising him of his right to contact the Indian Consulate.

4.  Count 18 contains no allegations relating to the Agent Defendants.

5.  Count 19 alleges that Defendants Russ, Huff, Aquino, Carp, and Konieczny committed perjury in grand jury proceedings, Defendant Del Re committed perjury in February 2006, and Defendants Bole, Huff and Russ committed perjury in March and April 2006.

6.  Counts 20 and 22 contain no allegations against Defendants Huff, Carp, Konieczny and Bole.

7.  Count 35 alleges that Defendants Aquino, Russ and Gobin directed a person to record conversations without obtaining the

approval of the Pennsylvania Attorney General or the District
Attorney.

### 3.    Allegations Against Defendant Meehan

Defendant Meehan is only referenced in the complaint three times, but as
Defendant Meehan is sued only in his official capacity, any claims against him are
actually against the United States.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 166
(1985).

### 4.    Allegations Against Defendant Gonzales

Defendant Gonzales is only referenced once in the complaint, at Paragraph
21 where he is identified as the Attorney General of the United States.  As is the
case with Defendant Meehan, any claims against Defendant Gonzales in his
official capacity are in reality claims against the United States.

## II . Legal Standards

### A.    Standard for Motion to Dismiss

In considering a motion to dismiss pursuant to Rule 12(b)(6), the
complaint's allegations must be construed favorably to the pleader.  The court
must accept as true all of the Plaintiff's factual allegations and draw from them all
reasonable inferences.  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>Schrob v.
Catterson</u>, 948 F.2d 1402, 1405 (3d Cir. 1991).  The court may consider, in
addition to the facts alleged in the complaint, matters of public record and exhibits

attached to the complaint.  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d

1380, 1384 n. 2 (3d Cir. 1994).  The court should grant a Rule 12(b)(6) motion

only if there are no sets of facts under which the nonmoving party can prevail.

Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  There is no

requirement, however, that the court accept as true legal conclusions couched as

factual allegations.  Papasan v. Allain, 478 U.S. 265 (1986).

In reviewing a motion to dismiss for lack of subject matter jurisdiction

under Rule 12(b)(1), "the trial court is free to weigh the evidence and satisfy itself

as to the existence of its power to hear the case."  Mortensen v. First Fed. Sav.

And Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1997).  In addition, Plaintiff bears the

burden of pleading facts adequate to support subject matter jurisdiction.  Id.

### B.     Standard for Motion for Summary Judgment

Summary judgment is appropriate where the moving party, through

affidavits, depositions, admissions, and answers to interrogatories, demonstrates

that there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law.  Jalil v. Advel Corp., 873 F.2d 701, 706

(3d Cir. 1989), cert. denied, 110 S.Ct. 725 (1990); Fed. R. Civ. P. 56(c).  The

moving party has the burden of demonstrating the absence of genuine issues of

fact, with all reasonable inferences from the record in favor of the nonmoving

12

party.  Jalil, 873 F.2d at 706; Anderson v. Liberty Lobby, 447 U.S. 242, 255 (1986).

Rule 56 mandates that summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  To establish that a triable fact does exist, the nonmoving party must point to specific evidence in the record that supports each essential element of its case.  Id. at 322-23; Childers v. Joseph, 842 F.2d 689, 694-95 (3d Cir. 1988).  In doing so, a party cannot merely restate the allegations of its complaint, nor rely on self-serving conclusions that are unsupported by specific facts in the record.  Celotex, 477 U.S. at 322-23; Matsushita Electric Industrial Co. V. Zenith Radio, 475 U.S. 574, 586-87 (1986).

Finally, the existence of some factual dispute will not defeat an otherwise properly supported motion for summary judgment; rather, there must be a genuine issue of a material fact.  Anderson v. Liberty Lobby, 477 U.S. at 247-48.  Substantive law determines which facts are material.  Gabai v. Jacoby, 800 F.Supp. 1149, 1153 (S.D.N.Y. 1992).  A factual dispute is genuine only if it is sufficient to support a jury verdict in favor of the nonmoving party.  Gray v. York Newspapers. Inc., 957 F.2d 1070, 1078 (3d Cir. 1987); Hankins v. Temple

University, 829 F.2d 437, 440 (3d Cir. 1987).  Evidence that is "merely colorable" or "not significantly probative" will not defeat summary judgment.  Anderson, 477 U.S. at 249-50.

## III.   Defenses Applicable to All Counts

### A.   Absolute Prosecutorial Immunity

Defendants assert that absolute prosecutorial immunity shields the AUSA Defendants from suit on all counts.   "Acts undertaken by a prosecutor for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."  Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).   In contrast, a prosecutor acting as an administrator or investigative officer rather than an advocate is cloaked only with qualified immunity, rather than absolute immunity. Imbler, 424 U.S. at 430-31; Burns v. Reed, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991).  "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question."

Burns, 500 U.S. at 492-96.

In this case, Plaintiff alleges the AUSA Defendants committed statutory and constitutional violations in: obtaining Plaintiff's bank and credit card records

through subpoenas and search warrants (Counts 1, 16);  obtaining search warrants, and obtaining the contents of Plaintiff's Temple University e-mail account (Counts 2-8, 16);  obtaining wiretap orders, and intercepting telephone communications between the United States and India (Counts 9-11, 16); exceeding authorized access to a protected computer (Counts 12, 16); causing to be installed pen registers and trap & trace devices (Counts 13, 16); procuring search warrants knowing that they were "maliciously drafted" and without probable cause or particularity (Count 14);  presenting false and misleading information to the grand jury, providing discovery to Plaintiff in electronic format, maliciously putting a separation order between Plaintiff and his co-defendant to hamper his defense, and obtaining restraining orders without probable cause (Count 17);  maliciously filing motions for continuances, attempting to "threaten and coerce plaintiff to give statements without the presence of his counsel, and sending a co-defendant to Africa (Count 18); committing and suborning perjury (Counts 19, 20); and conducting warrantless searches and seizures (Counts 21, 22).

The AUSA Defendants' actions in Counts 17, 18, 19, and 20, involve the AUSA Defendants' conduct in prosecuting the case against Plaintiff, including presenting evidence to the grand jury and examining witnesses at judicial hearings, and is shielded by absolute immunity.  See Burns, 500 U.S. at 490-92

15

(1991) (noting that conduct which falls within the ambit of absolute prosecutorial immunity includes conduct before grand juries, appearances in court in support of applications for search warrants, and presentation of evidence at such a hearings).

It is less apparent, however, whether the AUSA Defendants are shielded from those claims involving allegedly illegal searches and wiretaps – Counts 1-14, 16, and 21-22.  See Kulwicki v. Dawson, 969 F.2d 1454, 1465 (3d Cir. 1992) (noting the line between quasi-judicial and investigative activity is far from clear). Merely investigative evidence-gathering is not absolutely protected.  See Kulwicki v. Dawson, 969 F.2d 1454, 1465 (3d Cir. 1992).  However, "to the extent that the securing of information is necessary to a prosecutor's decision to initiate a criminal prosecution, it is encompassed within the protected, quasi-judicial immunity afforded to the decision itself." See Forsyth v. Kleindienst, 599 F.2d 1203, 1215 (3d Cir.1979) , cert. denied, sub nom. Mitchell v. Forsyth, 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981); Panayotides v. Rabenold, 35 F. Supp. 2d 411, 416 (E.D. Pa. 1999) (holding prosecutors enjoy immunity from investigatory acts taken to the extent that the securing of information is necessary to a prosecutor's decision to initiate a criminal prosecution), aff'd 210 F.3d 358 (3d Cir. 2000).

In this case, the court lacks the necessary information to determine whether the AUSA defendants were acting in a role as advocate for the state in allegedly

authorizing illegal searches and wiretaps.[3]   Thus, at this time, Defendants have not met their burden of establishing that absolute prosecutorial immunity applies to the AUSA's alleged wrongful actions in gathering evidence.

### B.    Qualified Immunity

Defendants allege the individual Defendants are entitled to qualified immunity, because Plaintiff can present no evidence that any of the individual Defendants actually committed any of the wrongs alleged.  Given that Defendants appear to base all claims of qualified immunity solely on the fact that Plaintiff has failed to put forth sufficient evidence of the alleged violations, rather than that he had failed to allege violations of clearly established rights, the court will deny the claims of qualified immunity with leave to renew once all discovery disputes have been resolved.[4]

---

[3] In determining whether a prosecutor's actions in obtaining search warrants are protected by absolute immunity, several courts have drawn a distinction between a prosecutor's actions in obtaining a search warrant *prior* to the filing of a complaint or indictment and *subsequent* to such a filing – finding those actions occurring *prior* to indictment to be investigatory in nature. See Schrob v. Catterson, 948 F.2d 1402, 1415 (3d Cir. 1991); see also McSurely v. McClellan, 697 F.2d 309 (D.C. Cir. 1982) (holding that Defendant's preparation of the warrants and participation in the search and seizure were not core prosecutorial functions because "they involve[d] not the protected decision to initiate prosecution, but rather the earlier, preliminary gathering of evidence which may blossom into a potential prosecution").  Additionally, the court notes that due to the lack of evidence before the court, it is unclear what role, if any, the AUSA defendants actually played in the alleged violations.

[4] Plaintiff filed a Motion to Compel Discovery, which the court denied without prejudice as premature.  To the extent that such a request is no longer  premature, Plaintiff is free to file a renewed motion to address any outstanding discovery requests.

## IV.   DISCUSSION

### A.      Right to Financial Privacy Act (Count 1)

In Count 1, Plaintiff claims that AUSA Defendants and Agent Defendants violated Plaintiff's rights under the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. § 3401, et seq., by failing to provide certification of compliance as required by the Act.[5]  Cpt., ¶ 33.

Section 3403(b) of the RFPA prohibits financial institutions from releasing a customer's records until the government authority seeking them certifies that it has complied with the applicable provisions of the Act.  Additionally, Sections 3405 (administrative subpoenas), 3406 (search warrants), 3407 (judicial subpoenas), and 3408 (formal written requests), contain provisions requiring notice be provided to the customer.  See 12 U.S.C. §§ 3403(b), 3405(2), 3406(b), (c), 3407(2), 3408(4)(A).

In this case, Defendants argue that Plaintiff cannot produce evidence that the bank and wire transfer records were not obtained through grand jury subpoenas.  Records obtained pursuant to grand jury subpoena or court order respecting a grand jury proceeding are exempted from the RFPA's notice

---

[5] Defendant concedes that the Act does not apply to individual Defendants. See 12 U.S.C. § 3417.  Rather,  he argues that the acts of these individuals form the basis for his suit against the individuals' respective agencies.

requirements:

> Nothing in this chapter (except section 3415 and 3420 of this title)
> shall apply to any subpena or court order issued in connection with
> proceedings before a grand jury, except that a court shall have
> authority to order a financial institution, on which a grand jury
> subpena for customer records has been served, not to notify the
> customer of the existence of the subpena or information that has been
> furnished to the grand jury, under the circumstances and for the
> period specified and pursuant to the procedures established in section
> 3409 of this title.

12 U.S.C. § 3413(i); see also In re Grand Jury Proceedings, 636 F.2d 81, 84 (5th

Cir. 1981) ("Under Section 3413(i) . . . disclosure pursuant to issuance of a

subpoena or court order respecting a grand jury proceeding is exempted from all

provisions of the Act except[] Section 3415, the reimbursement section, and

Section 3420 which controls the nature of the search.").  This provision exempts

disclosure pursuant to grand jury subpoena from the civil penalty sections as well

as the notice provisions.  636 F.2d at 86; see also Taylor v. Department of the Air

Force, 18 F. Supp. 2d 1184, 1188 (D.Colo. 1998).

Plaintiff counters that the Defendants have refused to comply with the

discovery requests that would allow him to determine whether the bank records

were issued in response to grand jury subpoenas.  Given this apparent discovery

dispute, the court will deny Defendant's Motion as to Count One with leave to

renew by Motion for Summary Judgment.

**B.      Violations of the Stored Communications Act (Counts 2-8)**

Counts 2 through 8 assert claims against AUSA Defendants and Agent

Defendants for violations of the Stored Communications Act, 18 U.S.C. 2701, et

seq.  In Counts 2-7, Plaintiff alleges that the AUSA and Agent defendants violated

the Act by (1) obtaining "opened" e-mails; (2) failing to provide "notice of search

warrant" to Plaintiff; (3) failing to provide an inventory sheet to the issuing

magistrate judge; (4) obtaining a search warrant without probable cause;  and (5)

procuring the search warrant from a judge without jurisdiction.  Cpt., ¶¶ 36, 37.

Count Eight alleges the Defendants searched his Temple University email account

without a warrant.

The Stored Communications Act, however,

does not prohibit (1)  obtaining "opened" e-mails, (2) failing to provide

"notice of search warrant" to Plaintiff;  or (3) failing to provide an inventory sheet

to the issuing magistrate judge. First, to the extent Plaintiff purports to assert

claims for violation of the Stored Communications Act based on the government's

obtaining of "opened" e-mails, the claims must be dismissed because such

conduct, even if proved, does not violate the Act.  Second, The Defendants need

not provide notice of the search warrants to Plaintiff under the Stored

Communications Act; it is only if the government elects to obtain the information

via subpoena that it must provide notice to the subscriber or customer.  18 U.S.C.

§ 2703(b)(1)(A).  Third, the Act contains no requirement that an inventory sheet

be provided to the issuing magistrate judge.   Accordingly, even if these

allegations were true, they would not constitute violations of the Stored

Communications Act.

Defendants further argue that Plaintiff's remaining claims under the Stored

Communications Act are barred by Heck v. Humphrey, to the extent they are not

barred by collateral estoppel.  See Albert v. Schwartz,173 Fed. Appx. 106, 108 (3d

Cir. 2006) (holding that Defendants in a Section 1983 action can assert collateral

estoppel as a defense where the plaintiff is attempting to raise issues he previously

raised in a criminal proceeding) (citing Anela v. City of Wildwood, 790 F.2d

1063, 1068 (3d Cir.1986))

Under the doctrine of Heck v. Humphrey, "when a state prisoner seeks

damages in a § 1983 suit, the district court must consider whether a judgment in

favor of the plaintiff would necessarily imply the invalidity of his conviction or

sentence; if it would, the complaint must be dismissed unless the plaintiff can

demonstrate that the conviction or sentence has already been invalidated." Heck

v. Humphrey, 512 U.S. 477, 487, 114 S.Ct. 2364, 2372 (1994).

In this case, the Defendants provide no factual basis for determining whether

21

a judgment in favor of the Plaintiff on these counts would necessarily invalidate the conviction.[6]   Thus, the court will deny without prejudice the Motion to Dismiss as to these counts on the basis of <u>Heck v. Humphrey</u> in order that the parties may more fully develop the record.[7]

### C.   Wiretap Act (Counts 9-11)

Defendants also argue that Counts 9-11 are barred by  <u>Heck v. Humphrey</u>, to the extent they are not barred by collateral estoppel.[8,9]  In Counts 9 and 10, Plaintiff

---

[6] The court notes that the Stored Communications Act does not provide for exclusion of evidence as a remedy.  It could be argued that some of the conduct alleged by Defendant potentially constitutes Fourth Amendment violations that could lead to exclusion of the evidence, however.

[7] The court notes that on its face <u>Heck v. Humphrey</u> only applies to Section 1983 actions; however, courts have expanded its use to Section 1985 actions.  <u>Hazel v. Reno</u> 20 F. Supp. 2d 21, 23 (D.D.C. 1998) (noting that <u>Heck</u>, on its face, addresses only actions brought under §1983); <u>see also</u> <u>Parris v. United States</u>, 45 F.3d 383, 385 (10th Cir. 1995) (holding that the same common law principles that informed the Supreme Court's decision in <u>Heck</u> should inform the decision of whether an action under the FTCA is cognizable when it calls into question the validity of a prior conviction).

[8] Plaintiff is collaterally estopped from raising the claims set forth in Counts 9 and 10 because he raised the same claims in his criminal case and lost, to the extent Plaintiff has not preserved these issues for appeal.  Plaintiff moved in his criminal case to suppress the e-mails obtained through the wiretaps at issue in these counts on the basis that they were not timely sealed.  After a suppression hearing conducted on January 31, and February 21, 2006, the Court issued extensive findings and conclusions.  <u>USA v. Bansal</u>, Dkt. No. 479.  The Court concluded that the government had satisfactorily explained the seven and ten day delays in sealing the data, and that the government had proved that none of the data had been altered or corrupted as a result of the delays.  <u>Id</u>., at 9, 15.  As a result, the Court denied the motion to suppress.  <u>Id</u>. at 15.

In Counts 9 and 10 Plaintiff also claims defendants violated the Wiretap Act because the court order was not issued by a judge "within the jurisdiction," there was no use of a "device," the process was not an "interception" but a "seizure" of e-mails, and the agent's affidavit was "faulty."  These issues were raised in Plaintiff's criminal trial and decided against him.  <u>United States v. Bansal</u>, Dkt. No. 348 (Order denying Bansal's suppression motion and finding that

claims that the AUSA defendants and Defendant Meehan violated the Wiretap Act,

18 U.S.C. § 2510, et seq., in the process of obtaining court orders authorizing

interception of Plaintiff's e-mail accounts.  Cpt., ¶¶ 59-66.

Evidence obtained in violation of the Wiretap Act must be excluded.  See 18

U.S.C.A. § 2515 ("Whenever any wire or oral communication has been intercepted,

no part of the contents of such communication and no evidence derived therefrom

may be received in evidence in any trial, hearing, or other proceeding in or before

any court, grand jury, department, officer, agency, regulatory body, legislative

committee, or other authority of the United States, a State, or a political subdivision

thereof if the disclosure of that information would be in violation of this chapter.").

Violations of Wiretap Act, thus, could potentially imply the invalidity of the

_____

Judge Davis had jurisdiction to order interception of e-mails, interception of e-mails in short-term storage is covered by the Wiretap Act, and no prejudice to Bansal resulting from alleged defects in interception order).

[9]Defendants also argue that Counts 9-11 are subject to dismissal under the Federal Tort Claims Act.  Although our Court of Appeals has not addressed this issue, the Tenth Circuit has rejected this argument,  holding that the Federal Tort Claims Act is not the exclusive remedy for violations of the Wiretap Act, because the Wiretap Act is  "a statute of the United States under which [a civil] action against an individual is otherwise authorized." Apampa v. Layng, 157 F.3d 1103, 1105 (7th Cir. 1998) (allowing civil suit under Wiretap Act to proceed against federal agents).

Similarly, Counts 2-8 of the Stored Communications Act creates a civil remedy. 18 U.S.C.A. § 2707- (Except as provided in section 2703(e), any provider of electronic communication service, subscriber, or other person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate).  Thus, the Federal Tort Claims Act similarly does not preclude suit against the individual defendants in Counts 2-8.

conviction.  However, the "fact that some evidence used in a trial is tainted by

illegality does not necessarily undermine the conviction, given the presence of

other evidence and the limitations of the exclusionary rule." <u>Apampa v. Layng</u>,

157 F.3d 1103, 1105 (7th Cir. 1998) (discussing the potential applicability of <u>Heck

v. Humphrey</u> to a prisoners' civil suit alleging violations of the Wiretap Act against

two United States Attorneys and a DEA agent).  Accordingly, as above, the court

will deny the Motion with respect to Counts 9-11 with leave to renew by Motion

for Summary Judgment.

### D.    Computer Fraud and Abuse Act (Count 12)

In Count 12, Plaintiff purports to state a claim against the AUSA and Agent

defendants for violation of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C.

§ 1030 (a)(2)(C).  The CFAA is a criminal statute that provides a civil remedy only

for conduct involving one of the five factors set forth in 18 U.S.C. §

1030(a)(5)(B).[10]  In this case, only one of these five factors is potentially relevant:

"loss to 1 or more persons during any 1-year period aggregating at least $5,000 in

value." 18 U.S.C. § 1030(a)(5)(B)(I).  These losses are limited to economic

---

[10]  The "factors" set forth in Section (a)(5)(B) include loss to one or more persons
aggregating at least $5,000, modification or impairment of a medical examination,
diagnosis, treatment, or care, physical injury, a threat to public health or safety, or damage
to a computer system used in the administration of justice, national defense, or national
security.  18 U.S.C. § 1030(a)(5)(B).

damages.  18 U.S.C. § 1030(g).

Here, Plaintiff has not alleged that he has suffered $5000 in economic damages related to Defendants' alleged violation of the CFAA.  Moreover, even construing Plaintiffs' allegations liberally, nothing in his complaint suggests that the alleged CFFA abuse caused compensable economic loss.  Thus, the Court will dismiss Count 12 against all Defendants.[11]

### E.      Pen Register Statutes (Count 13)

In Count 13, Plaintiff purports to state a claim against the AUSA and Agent Defendants for violating "the Pen Register Statutes," 18 U.S.C. § 3121, et seq., by having pen register and trap and trace devices installed without first obtaining a court order.  Sections 3121 through 3127 of Title 18, United States Code, regulate use of pen registers and trap and trace devices.  Section 3121(d) provides a criminal penalty for violation of the statute.  Defendants argue that the statute, 18 U.S.C. § 3121, et seq, does not contains a civil remedy provision, and thus the claim must be dismissed.  The Stored Communications Act, however, provides a remedy for violations of the Pen Register Statute. 18 U.S.C. §2707(g), providing:

---

[11] The Court rejects Defendants' argument as to Count 12 to the extent it asserts that section 1030(g)'s reference to subsection (a)(5)(B) limits relief under section 1030(g) to only subsection (a)(5) claims.  See P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC., 428 F.3d 504, 512-513 (3d Cir. 2005) (rejecting this argument).

> Any willful disclosure of a 'record' . . . obtained by an investigative or
> law enforcement officer, or a governmental entity . . . from a device
> installed pursuant to section 3123 or 3125 of this title, that is not a
> disclosure made in the proper performance of the official functions of
> the officer or governmental entity making the disclosure, is a
> violation of this chapter.

18 U.S.C.A. § 2707(g).   Thus, construing the allegations in Plaintiffs' complaint

liberally, the court will not dismiss this claim on the ground that the Pen Register

Statute lacks a civil remedy.

### F.    Maliciously Procured Search Warrant (Count 14)

In Count 14, Plaintiff purports to state a claim against the AUSA and Agent

Defendants for alleged violation of a criminal statute, 18 U.S.C. § 2235, which

imposes a criminal penalty for maliciously and without probable cause procuring a

search warrant.  The statute contains no civil remedy provision and does not create

a civil cause of action, and thus Count Fourteen must be dismissed.

Absent a clear indication from Congress, courts should not infer a civil cause

of action from a criminal statute.  California v. Sierra Club, 451 U.S. 287, 297

(1981).  The Court of Appeals for the Third Circuit has cautioned that an implied

private right of action should only be found where a court "can confidently

conclude Congress so intended."  State of New Jersey, Dep't. of Envtl. Protection

v. Long Island Power Auth., 30 F.3d 402, 421 (3d Cir. 1994).  Moreover, "the

general rule is that a private right of action is not maintainable under a criminal

statute." <u>Am. Postal Workers Union v. Ind. Postal Sys. Of Am.</u>, 481 F.2d 90, 93
(6th Cir. 1973).

Section 2235 is a straightforward criminal prohibition, and there is no
evidence that Congress intended to create a civil cause of action under Section
2235.  Further, a private individual may not file a criminal complaint in a United
States District Court.  <u>Barr v. Camelot Forrest Conservation Assoc.</u>, 153 Fed.
Appx. 860, 862 (3d Cir. 2005).  Accordingly, Count 14 must be dismissed for
failure to state a claim.[12]

### G.    Alien Tort Statute (Count 15)

In Count 15, Plaintiff asserts a claim under the Alien Tort Statute, 28 U.S.C.
§ 1350, against the Agent defendants, for arresting him without informing him of
his right to contact the Indian Consulate.  Cpt., ¶ 77.

Article 36 of the Vienna Convention on Consular Relations requires that an
arrested foreign national be informed of his right to contact his consulate.  Vienna
Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 77, T.I.A.S. No. 6820,
596 U.N.T.S. 261, Art. 36.   The Alien Tort Statute ("ATS") establishes jurisdiction

---

[12]  Plaintiff also attempts to assert a claim for civil conspiracy in Count 14.  Under
Pennsylvania law, there can be no cause of action for civil conspiracy absent a cause of
action for the underlying act.  <u>McKeeman v. Corestates Bank, N.A.</u>, 2000 Pa. Super. 117,
751 A.2d 655, 660 (2000).  Since there is no cause of action for violation of 18 U.S.C.
§ 2235, there can be no civil conspiracy to violate it.

in the district courts over civil actions by aliens for torts committed in violation of

a treaty of the United States. <u>Jogi v. Voges</u>, 2007 WL 730550, at *2 (7th Cir.

2007) (citing <u>Sosa v. Alvarez-Machain</u>, 542 U.S. 692 (2004)). The ATS does not

itself create a cause of action; rather, it provides a procedural mechanism through

which an alien Plaintiff may bring suit for violation of the law of nations or a treaty

of the United States. <u>Turkmen v. Ashcroft</u>, Civ. A. No. 02-2307, 2006 WL

1662663, at *50 (E.D.N.Y. June 14, 2006).

The Liability Reform Act provides that for civil actions based on the

wrongful conduct of federal employees acting with the scope of their employment,

the only remedy is an action under the Federal Tort Claims Act ("FTCA") against

the United States itself. 28 U.S.C. § 2679(b)(1). The only two exclusions to the

Liability Reform Act – constitutional claims and for claims based on statutes <u>of the

United States</u> which authorize actions against an individual – do not apply to

Plaintiff's claim under Article 36. <u>See</u> <u>Turkmen</u>, 2006 WL 1662663, at *50.

The Liability Reform Act requires that the United States be substituted for

the individual defendants; therefore, Plaintiff's Article 36 claim must proceed, if at

all, under the FTCA against the United States. <u>Id</u>. The United States, however, has

not waived sovereign immunity for such a claim:

> The Plaintiffs' international law claims, however, are not "cognizable"
> under 28 U.S.C. § 1346(b): "[T]o be actionable under the [FTCA], a

claim must allege . . . that the United States would be liable to the claimant . . . in accordance with the law of the place where the act or omission occurred," and "the 'law of the place' means the law of the State – the source of substantive liability under the FTCA." F.D.I.C. v. Meyer, 510 U.S. 471, 477-78 (1994)(internal quotation marks omitted).  Because claims 9, 10, and 11 arise instead under international law, they must be dismissed for lack of jurisdiction, as the United States has not waived its sovereign immunity with respect to these claims.

2006 WL 1662663, at *50.  Accordingly, Count 15 must be dismissed.

### H.    Constitutional Violations (Counts 16-18)

In Counts 16-18, Plaintiff alleges violations of his Fourth, Fifth and Sixth Amendment rights. Defendants seek dismissal of Counts 16, 17 and 18 based on Heck v. Humphrey.

### 1.  Fourth Amendment (Count 16)

In Count 16, Plaintiff asserts Section 1983 claims for violations of Fourth Amendment rights against the AUSA and Agent defendants for serving unlawful subpoenas, conducting warrantless searches and seizures, and maliciously obtaining a search warrant for a safe deposit box.  Cpt., ¶ 84.

In determining whether a judgement in favor of Plaintiff's Fourth Amendment claims would necessarily imply the invalidity of his conviction, the court must examine the specific facts of the case.  Gibson v. Superintendent of NJ Dept. of Law and Public Safety-Division of State Police, 411 F.3d 427, 448-449

(3d Cir. 2005).  "In situations where the evidence seized as a result of an unlawful search or arrest was used to convict the defendant, district courts examine the factual circumstances to determine whether doctrines such as independent source, inevitable discovery, or harmless error would have permitted the introduction of the evidence."  Gibson, 411 F.3d at 448-449; cf. United States v. Helbling, 209 F.3d 226, 241 (3d Cir. 2000) ("If the error is constitutional, we will affirm if we find that the error is harmless beyond a reasonable doubt").  "Where it is impossible or improbable that such doctrines would have permitted the introduction of the evidence at issue in the criminal proceedings, the courts toll the statute of limitations as to the § 1983 claims until such time as the Plaintiff's criminal proceedings have been resolved in his or her favor." Id.

At this time, the court does not have the information necessary to conduct this fact-based approach.  In this case, it is not clear from the face of the Complaint, or Defendants' Motion, whether the alleged illegal searches or seizures lead to evidence that contributed to Plaintiff's conviction, and if so, whether the evidence necessarily would have been excluded.   Therefore, the court will deny Defendants' Motion with leave to renew by motion for summary judgment.

### 2. Fifth Amendment (Count 17)

In Count 17, Plaintiff claims that the AUSA and Agent Defendants and

Defendant Meehan violated Plaintiff's Fifth Amendment rights by presenting "false and misleading information in the grand jury proceedings," obtaining restraining orders "without probable cause and denied the Plaintiff Due Process Right to produce rebuttal," providing Plaintiff with discovery in electronic format, and putting a "separation order" between Plaintiff and his co-defendant. Cpt., ¶ 85. Plaintiff also claims the Agent defendants failed to advise him of his Miranda rights, and interrogated him "through coercion." Id.

Again, it is not clear to the court based on the record before it whether these violations would necessarily imply the invalidity of the conviction. See Heck v. Humphrey, 512 U.S. 477, 486, 114 S.Ct. 2364, 2372 (1994). As such, the court will, thus, deny the Motion to Dismiss as to Count 17 with leave to renew.

### 3. Sixth Amendment (Count 18)

Finally, in Count 18, Plaintiff alleges the AUSA Defendants violated his Sixth Amendment Rights. Specifically, Plaintiff claims the AUSA Defendants and Defendant Meehan denied Plaintiff his right to a speedy trial, attempted "to threaten and coerce the pla[i]ntiff to give statements without the presence of his counsel," and sent a co-defendant to Africa. Cpt., ¶ 88. Compl. ¶ 87.[13]

---

[13] Defendants contend that the alleged violations of the Fourth, Fifth, and Sixth Amendment infect virtually every aspect of the investigation leading to his prosecution, thus finding in favor of Plaintiff would necessarily invalidate the conviction. In so arguing, Defendants aggregate the effect of the alleged violations rather than considering the alleged

Again, it is unclear whether a judgment in favor of Plaintiff would invalidate Plaintiff's conviction.  See Simmons v. O'Brien, 77 F.3d 1093, 1095 (8th Cir. 1996) (noting that admission of a coerced confession will not necessarily invalidate a conviction).  Thus, Court will deny the Motion as to this count with leave to renew.

## I.      Criminal Statutes (Counts 19-24)

In Counts 19-24, Plaintiff asserts claims against the AUSA and Agent Defendants for violations of criminal statutes.  These counts must be dismissed for failure to state a claim, because none of the statutes cited in Counts 19-24 create civil causes of action.  See State of New Jersey, Dep't. of Envtl. Protection v. Long Island Power Auth., 30 F.3d 402, 421 (3d Cir. 1994); Barr v. Camelot Forest Conservation Ass'n., Inc., 153 Fed. Appx. 860, 862 (3d Cir. 2005).[14]

## K.      Pennsylvania Wiretapping and Electronic Surveillance Control Act (Counts 25-25)

### 1.  Subchapter C (Counts 25-31)

---

violations individually.  Defendants' approach does not appear to be supported by caselaw.

[14] In addition, to the extent Plaintiff is attempting to state a cause of action for perjured testimony in Counts 19 and 20, they must be dismissed because witnesses have absolute immunity from civil liability for their testimony in court.  Briscoe v. LaHue, 460 U.S. 325, 345-46 (1983).  Prosecutors also have absolute immunity for statements they make in court or before the grand jury.

In Counts 25-31, Plaintiff asserts claims under Subchapter C of Pennsylvania's "Wiretapping and Electronic Surveillance Control Act," 18 Pa.C.S. §§ 5741-5749, which prohibits unlawful access to stored based on the conduct described in Counts 2 through 8 (the counts alleging violation of the Federal Stored Communications Act) 18  Cpt., ¶ 108.

The Supremacy Clause, 1 U.S. Const., Art. VI, cl.2, invalidates state laws that interfere with or are contrary to federal laws.  Hillsborough County, Fla. v. Automated Med. Labs., Inc., 471 U.S. 707, 712 (1985).  "[T]he Supreme Court recognized that federal preemption of state law can occur in three types of situations: ( 1) where Congress explicitly preempts state law, (2) where preemption is implied because Congress has occupied the entire field and (3) where preemption is implied because there is an actual conflict between federal and state law. Pokorny v. Ford Motor Co., 902 F.2d 1116, 1120 (3d Cir. 1990).  Here, Defendants argue that the Stored Communications Act expressly preempts state law, relying on 18 U.S.C.  § 2708.

18 U.S.C. § 2708 provides that "[t]he remedies and sanctions described in this chapter are the only judicial remedies and sanctions for nonconstitutional violations of this chapter."  18 U.S.C. § 2708.  Contrary to Defendants' assertion, however, the purpose of this provision is not to expressly preempt state law, but

33

rather to establish that the exclusionary rule is not a remedy provided for by the Act.  See United States v. Smith, 155 F.3d 1051, 1056 (9th Cir. 1998) (noting that the Stored Communications Act expressly rules out exclusion as a remedy; "§ 2708, entitled 'Exclusivity of Remedies,' states specifically that § 2707's civil cause of action and § 2701(b)'s criminal penalties 'are the *only* judicial remedies and sanctions for violations of' the Stored Communications Act"); In re National Security Agency Telecommunications Records Litigation, 2007 WL 163106, at*3 (N.D. Cal. Jan. 18, 2007) (discussing the meaning of section 2708); see also S. REP. NO. 99-541 (1986) ("The purpose of [18 U.S.C. § 2708] is to underscore that . . . the Electronic Communications Privacy Act does not apply the statutory exclusionary rule contained in title III of the Omnibus Crime Control and Safe Streets Act of 1968 to the interception of electronic communications").  Thus, the court holds that the Stored Communications Act does not expressly preempt state law addressing the same subject matter.[15]  Thus, the court will deny the Motion as to counts 25-31 with leave to renew by motion for summary judgment.

### 2.  "Subchapter B (Counts 32-35)

In Counts 32-34, Plaintiff asserts  claims under Subchapter B of

---

[15] Defendants do not argue any other form of preemption applies.

Pennsylvania's Wiretap Statute, 18 Pa.C.S. § 5703-5728, based on the conduct described in Counts 9 through 11 of his complaint (the counts alleging violation of the Federal Wiretap Act). Cpt., ¶ 110. In Count 35, Plaintiff alleges that Agent defendants directed an unidentified person to record conversations in violation of the Pennsylvania Wiretap Act. Cpt., ¶¶ 111, 112.

In this case, Defendants argue that the Pennsylvania Wiretap Act is impliedly preempted because there is an actual conflict between state and federal law. "Such a conflict will be found 'when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.'" Pokorny, 902 F.2d at 1120 (quoting Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988).

Certain provisions of the Pennsylvania Wiretap Act, 18 Pa.C.S. §5701, et seq., are not consistent with the Federal Wiretap Act. C.f. United States v. Hall, 543 F.2d 1229, 1232 (9th Cir. 1976) ("Federal officers are authorized to wiretap under s 2516(1), regardless of the provisions of state law."). Relevant to this case, Plaintiff contends that the Defendants did not comply with 18 Pa. C.S. 5704(2)(ii), which requires law enforcement officers to obtain the approval of the State Attorney General or a District Attorney when conducting a wiretap without a

warrant where one party has consented to be recorded.  Federal law contains no

such requirement.  Cf. United States v. McNulty, 729 F.2d 1243, 1261 (10th Cir.

1983) ("The federal statute specifically permits introduction of consensual

recordings and thus controls over conflicting state eavesdropping regulations").  As

these provisions conflict and the state law would stand as an obstacle to federal law

enforcement, federal officers participating in a federal investigation are not

required to follow 18 Pa. C.S. 5704(2)(ii), and thus Count 35 must be dismissed.

As to Count 32-34, Defendants do not identify a conflict, and thus the Motion to

Dismiss as to those claims will be denied without prejudice.

### J.      Common Law Torts Counts (36-28)

Plaintiff alleges state law torts in Counts 36 through 38 – invasion of

Privacy, abuse of process, and civil conspiracy.  These claims are subject to

dismissal on the basis of the Federal Tort Claims Act.

The Federal Employees Liability Reform and Tort Compensation Act of

1988 immunizes government employees from liability for injuries arising from

negligent or wrongful acts or omissions while acting within the scope of their

employment.  Section 2679(b)(1) provides:

> The remedy against the United States provided by [the Federal Tort
> Claims Act] for injury or loss of property, or personal injury or death
> arising or resulting from the negligent or wrongful act or omission of

> any employee is exclusive of any other civil action or proceeding for
> money damages by reason of the same subject matter against the
> employee whose act or omission gave rise to the claim or against the
> estate of such employee.  Any other civil action or proceeding for
> money damages arising out of or relating to the same subject matter
> against the employee or the employee's estate is precluded without
> regard to when the act or omission occurred.

28 U.S.C. § 2679(b)(1).  Federal employees are immune from suit even if the

Federal Tort Claims Act bars recovery from the United States.  United States v.

Smith, 499 U.S. 160, 165 (1991).

When the Attorney General has certified that a defendant employee was

acting within the scope of his employment at the time of the incident out of which

the claim arose, any civil action against the employee shall be deemed an action

against the United States.  28 U.S.C. § (d)(1); 28 C.F.R. § 510; 28 C.F.R. § 15.3

(delegating certification authority to the United States Attorneys.)

In this case, the United States Attorney for the Eastern District of

Pennsylvania has certified that all of the individual defendants were acting within

the scope of their employment at all times relevant to this case.  See Defendants'

Exhibits A-N.  Defendants' certifications constitute *prima facie* evidence that the

employee's challenged conduct occurred within the scope of employment.  See

Schrob v. Catterson, 967 F.2d 929, 936 (3d Cir. 1992).  Thus, Plaintiff has the

burden of providing facts to rebut these certifications.  See Schrob v. Catterson,

967 F.2d 929, 936 (3d Cir. 1992) (holding the court need not hold an evidentiary hearing on the issue of substitution of parties if the facts can be determined without an evidentiary hearing).  The question of whether an employee's challenged conduct occurred within the scope of employment is determined by Pennsylvania state law. Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000).

Here, the individual Defendants were acting "within the scope" of their employment, even assuming that their actions  constituted intentional torts. Brumfield, 232 F.3d at 380.  Under Pennsylvania law, "conduct is within the scope of employment if, but only if: (a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits [and] (c) it is actuated, at least in part, by a purpose to serve the master...." See 232 F.3d at 380 (citing Restatement (Second) Agency § 228).  "[T]he liability of the employer may extend even to intentional or criminal acts committed by the servant" and even to acts not authorized by the employer "if they are clearly incidental to the master's business." See Id. (citation omitted).  Plaintiff's allegations make clear that the individual Defendants' conduct was incidental to the Department of Justice's "business" of investigating and prosecuting Plaintiff.  Further, Plaintiff has proffered no evidence that the Defendants' conduct was not motivated at least in part by a purpose to serve the Department of Justice.  The court, therefore, finds that

38

the individual Defendants were acting within the scope of their employment.  <u>See</u> <u>Id.</u> (holding that because Plaintiff proffered no evidence that the individual's alleged wrongful actions was not motivated at least in part to serve his employer, the Bureau of Prisons, the district court properly substituted the United States for the individual defendants).  As such, the court will substitute the United States for the individual Defendants for Counts 34-36.

Counts 36-38 must be dismissed against the United States, however, due to Plaintiffs' failure to exhaust administrative remedies.  The United States, as sovereign, is immune from suit except to the extent it consents to be sued.  <u>United States v. Mitchell</u>, 445 U.S. at 538.   Any waiver of sovereign immunity must be strictly construed in favor of the United States.  <u>Library of Congress v. Shaw</u>, 478 U.S. 310, 318 (1986).  Congress has provided a limited waiver of sovereign immunity through the Federal Tort Claims Act, 28 U.S.C. § 2671, <u>et</u> <u>seq</u>.

The FTCA requires, as a prerequisite to filing suit, presentation of an administrative tort claim to the appropriate administrative agency within two years. 28 U.S.C. § 2675(a).[16]  This requirement is jurisdictional; where no such claim has

---

[16] The relevant portion of section 2675 reads as follows:

An action shall not be instituted upon a claim against the United States for damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government acting within the scope of his office or employment, unless

been filed within two years, the court lacks subject matter jurisdiction.  <u>Bialowas v.</u>

<u>United States</u>, 443 F.2d 1047, 1049 (3d Cir. 1971); <u>see also</u> <u>McCarthy v. Madigan</u>,

503 U.S 140, 144 (1992) (holding that where Congress has specifically mandated

exhaustion of administrative remedies as a prerequisite to suit, such exhaustion is

required).  Department of Justice regulations governing administrative claims under

the Federal Tort Claims Act appear at 28 C.F.R. § 14.1, <u>et</u> <u>seq</u>.  Section 14.2(a)

provides the requirements that must be met by a claimant presenting a tort claim to a

Department of Justice component:

> **Administrative claim; when presented.**
>
> (a) For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident. . . .

28 C.F.R. § 14.2(a).  The Department of Treasury regulations are virtually identical.

31 C.F.R. § 3.2.

The "Notice of Civil Action (Federal Tort Claim)" documents attached to

---

claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing.

28 U.S.C. § 2675(a).

Plaintiff's complaint as Exhibits A4 (DEA), A5 (FBI), and A6 (United States

Attorney's Office), which Plaintiff identifies as the administrative claims he filed to

meet the FTCA jurisdictional requirement (Cpt., ¶¶ 27, 29), do not meet the

requirements of the regulation.  None of the documents identify a specific injury,

nor do any of the notices identify any state law torts.  Instead, each form simply

contains a list of statutes and constitutional provisions.  Cpt., Ex. A4, A5, A6.

The purpose of the exhaustion requirement is to enable government agencies

to resolve claims informally without burdening the courts with unnecessary

litigation.

> [The exhaustion of administrative remedies] serves judicial economy
> by preventing piecemeal judicial review of agency actions and
> facilitates judicial review by allowing the administrative tribunal to
> uses its expertise to develop a complete factual record.  Further, the
> doctrine serves to prevent the courts from frustrating congressional
> decisions to have certain disputes resolved originally in administrative
> forums.

Facchiano v. United States Dept. Of Labor, 859 F.2d 1163, 1166-67 (3d Cir. 1988)

(internal citation omitted).  "Thus, the requisite claim form should give the agency

the information necessary to make an intelligent evaluation of the claim's settlement

potential."  Arias v. United States, Civ. A. No. 05-4275, 2007 WL 608375, at *3

(D.N.J. Feb. 23, 2007) (citing Tucker v. United States Postal Service, 676 F.2d 954,

959 (3d Cir.1982)); see also Adegbuji v. United States, Civ. A. No. 04-2619, 2005

WL 1917770, at *2  (D.N.J. Aug. 10, 2005) (finding failure to exhaust on assault and battery claims because Plaintiff's administrative notice to the Agency failed to mention them).

Plaintiff, therefore, did not properly  "present" his state law tort claims to the agencies in accordance with the FTCA and applicable regulations, depriving Defendants of the opportunity to develop complete administrative records. Plaintiff's state law tort claims, therefore, are dismissed without prejudice for failure to exhaust administrative remedies.

## V.    CONCLUSION

Thus, for the reasons stated above the Motion is granted in part and denied in part.  An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AKHIL BANSAL,**<br>  **Plaintiff,**<br><br>  **v.**<br><br>**ERIC RUSS, et al.,**<br>  **Defendants.** | **CIVIL ACTION**<br><br>**NO. 06-4264** |

## ORDER

**AND NOW**, this 5th day of April, 2007, upon consideration of Defendants' Motion to Dismiss or in the Alternative Summary Judgment,, and the response thereto , it is hereby **ORDERED** as follows.

1.    Counts 17, 18, 19 and 20 are **DISMISSED** as to the AUSA Defendants on the basis of Absolute Immunity.

2.    Count 12 is **DISMISSED** as to all Defendants.

3.    Count 14 is **DISMISSED** as to all Defendants.

4.    Count 15 is **DISMISSED** as to all Defendants.

5.    Counts 19 through 24 are **DISMISSED** as to all Defendants.

6.    Count 35 is **DISMISSED** as to all Defendants.

7.    Counts 36 through 38 are **DISMISSED** without prejudice as to all Defendants.

8.   As to all other counts, Defendants' Motion is **DENIED** without prejudice with leave to renew by Motion for Summary Judgment for the reasons specified in the court's memorandum.

**BY THE COURT:**

**/s/ Marvin Katz**

_____

**MARVIN KATZ, S.J.**

_____